F. #2010R02495

**14 MISC 0 09**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -X
IN THE MATTER OF THE APPLICATION OF
THE UNITED STATES OF AMERICA FOR AN    SEALED APPLICATION
ORDER AUTHORIZING THE INSTALLATION
AND USE OF A PEN REGISTER AND A TRAP
AND TRACE DEVICE
- - - - - - - - - - - - - - - - -X

Evan M. Norris, an Assistant United States Attorney for the Eastern District of New York, hereby applies to the Court for an order pursuant to 18 U.S.C. § 3122, authorizing the installation and use of a pen register and a trap and trace device for a period of 60 days from the date of this order on the AT&T (the "Service Provider") email account alfredo.parada@att.net (the "SUBJECT EMAIL ACCOUNT").

In support of this application, I state the following:

1.   I am an Assistant United States Attorney in the Office of Loretta E. Lynch, United States Attorney for the Eastern District of New York. As such, I am an "attorney for the Government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure, and therefore, pursuant to 18 U.S.C. § 3122, may apply for an Order authorizing the installation and use of pen registers and trap and trace devices.

2.   The Court has authority to order the installation and use of a pen register or a trap and trace device anywhere in the United States if the Court finds that the attorney for the government has certified to the Court that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation. 18 U.S.C. §§ 3122 and

3123. As the United States Court of Appeals for the Second Circuit has explained, an application for a pen register or trap and trace device

> need only identify the applicant and the investigating law enforcement agency and certify that "the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. § 3122(b)(2). The provision was not intended to require independent judicial review of relevance; rather, <u>the reviewing court need only verify the completeness of the certification</u>.

In re United States, 10 F.3d 931, 935 (2d Cir. 1993) (emphasis added); accord In re Applications, 515 F. Supp. 2d 325, 329 (E.D.N.Y. 2007) (explaining "minimal requirement" of Section 3122(b)).

    3. Based on information provided to me by a Special Agent of the Federal Bureau of Investigation (the "investigating agency"), I hereby certify that the investigating agency and its law enforcement partners are conducting an ongoing criminal investigation into possible violations of federal criminal laws, including conspiracy to commit racketeering, money laundering and wire fraud, in violation of 18 U.S.C. §§ 1343, 1349, 1956, 1957 and 1961 et seq., by ALFREDO PARADA and others, and that the information likely to be obtained from a pen register and trap and trace device on the SUBJECT EMAIL ACCOUNT is relevant to that investigation.

    4. The foregoing criminal conspiracies relate to, among other things, corruption by current and former officials involved in international soccer governance and affiliated sports marketing companies that buy and sell television and other rights associated with the game of soccer.

## ADDITIONAL INFORMATION

5. A pen register, as defined in Title 18, United States Code, Section 3127, is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." A trap and trace device is defined as "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication."

6. In the traditional telephone context, pen registers captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls. Similar principles apply to other kinds of wire and electronic communications, as described below.

7. When one computer requests information from a second computer, the requesting computer specifies its own unique Internet Protocol ("IP") address so that the responding computer knows where to send its response. These IP addresses are, in the computer network context, conceptually identical to the origination phone numbers captured by traditional trap and trace devices installed on telephone lines.

8. A network is two or more computers or other devices connected to each other that can exchange information with each other via some transmission method, such as by wires, cables, or radio waves. The equipment that connects a computer or other device to the network is commonly referred to as a network adapter. Most network adapters have a Media

Access Control ("MAC") address assigned by the manufacturer of the adapter that is designed to be a unique identifying number. An adapter's unique MAC address allows for proper routing of communications on a local area network and may be used for other purposes, such as authentication of customers by some network service providers. Unlike a device's IP address that often changes each time a device connects to the Internet, a MAC address is fixed at the time of manufacture of the adapter. Because the address does not change and is intended to be unique, a MAC address can allow law enforcement to identify whether communications sent or received at different times are associated with the same adapter.

9. On the Internet, data transferred between devices is not sent as a continuous stream, but rather it is split into discrete packets. Generally, a single communication is sent as a series of packets. When the packets reach their destination, the receiving device reassembles them into the complete communication. Each packet has two parts: a "packet header" with routing and control information, and a payload, which generally contains user data. The packet header contains non-content information such as the packet's source and destination IP addresses and the size of the packet.

10. The packet header information collected by a pen register and trap and trace device contains no content and therefore constitutes "routing, addressing and signaling" information within the meaning of the statute, as amended in October 2001. As with traditional telephonic pen registers and trap and trace devices, it is feasible to use a combination of hardware and software to ascertain the source and destination addresses associated with the data transmission without collecting the content.

11.     An email message has its own routing header, in addition to the source and destination information associated with all Internet data. The email addresses in an email's message header are like the telephone numbers of both incoming and outgoing calls, because they indicate both origin and destination(s). They can be recorded by pen-trap devices and can be used to identify parties to a communication without revealing the communication's contents.

## RELIEF REQUESTED

12.     Based upon the above certification, the government requests that the Court issue an Order, pursuant to 18 U.S.C. §§ 3122 and 3123, that authorizes the installation and use of a pen register to record the dialing, routing, addressing, and signaling information associated with communications sent to or from the SUBJECT EMAIL ACCOUNT, along with the date and time of such communications, for a period of 60 days.

13.     Specifically, the pen register sought by this application will be installed at location(s) to be determined, and will collect dialing, routing, addressing, and signaling information associated with each communication to or from the SUBJECT EMAIL ACCOUNS, including, but not limited to, the date, time, and duration of the communication, and the following, without geographic limit:

        a.     IP addresses, including IP addresses associated with access to the accounts;

        b.     Headers of email messages, including the source and destination network addresses, as well as the routes of transmission and size

of the messages, but excluding content located in headers, such as subject lines; and

  c. the number and size of any attachments.

  14. The government further requests that the Court direct the Service Providers, and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order, to notify special agents of the investigating agency of any changes relating to the SUBJECT EMAIL ACCOUNT, including changes to subscriber information, and to provide prompt notice to the investigating agency of any termination of service to the email account.

  15. The government further requests that, pursuant to 18 U.S.C. § 3123(a)(1) and (b)(2), the Court direct that, upon service of the Order upon them, the Service Providers and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of the Order furnish the information, facilities, and technical assistance necessary to accomplish unobtrusively the installation and use of the pen register and trap and trace device with compensation to be paid by the investigating agency for reasonable expenses directly incurred in providing such facilities and assistance.

  16. The government further requests that the Order direct the Service Providers, and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order, to furnish the results of the pen register and trap and trace device installations to special agents of the

investigating agency as soon as practicable, and on a continuing basis, 24 hours a day for the duration of the Order.

17. Finally, pursuant to 18 U.S.C. §§ 3123(d) and 2705(b), the government also requests that the Service Providers, and any other person or entity whose assistance is used to facilitate execution of the Order be ordered not to disclose in any manner, directly or indirectly, by any action or inaction, the existence of this application and Order, the resulting pen register, or this investigation, except as necessary to effectuate the Order, unless and until authorized by this Court. Because the targets are unaware of the full scope and focus of the investigation, any disclosure of the instant application and Order would alert them to the existence of the investigation, which likely would cause them to flee or engage in the destruction of evidence.

18. No prior request for the relief set forth herein has been made except to the extent set forth above. The foregoing is affirmed under the penalties of perjury. See 28 U.S.C. § 1746.

Dated: Brooklyn, New York
       January 6, 2014

By: _____
    Evan M. Norris
    Assistant United States Attorney
    (718) 254-6376

F. #2010R02495

**14 MISC 009**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -X
IN THE MATTER OF THE APPLICATION OF
THE UNITED STATES OF AMERICA FOR AN      SEALED ORDER
ORDER AUTHORIZING THE INSTALLATION
AND USE OF A PEN REGISTER AND A TRAP
AND TRACE DEVICE
- - - - - - - - - - - - - - - - -X

This matter comes before the Court pursuant to an application by Assistant United States Attorney Evan M. Norris, an attorney for the Government as defined by Rule 1(b)(1) of the Federal Rules of Criminal Procedure and a duly-authorized representative of a "governmental entity" under 18 U.S.C. § 2703(c) and (d) requesting an Order pursuant to 18 U.S.C. §§ 3122 and 3123, authorizing for a period of 60 days the installation and use of a pen register and a trap and trace device for a period of 60 days from the date of this order on the AT&T (the "Service Provider") email account alfredo.parada@att.net (the "SUBJECT EMAIL ACCOUNT").

UPON REVIEW OF THE APPLICATION, THE COURT HEREBY FINDS THAT:

Pursuant to 18 U.S.C. § 3123, Applicant has certified that the information likely to be obtained by use of a pen register and a trap and trace device is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation ("investigating agency") into possible violations of criminal law, including conspiracy to commit racketeering, money laundering and wire fraud, in violation of 18 U.S.C. §§ 1343, 1349, 1956, 1957 and 1961 et seq., by ALFREDO PARADA and others.

2

IT IS HEREBY ORDERED, pursuant to 18 U.S.C. § 3123, that special agents of the investigating agency may install, or cause to be installed, and use a pen register to record and collect all non-content dialing, routing, addressing, and signaling information associated with each communication to or from the SUBJECT EMAIL ACCOUNT, including, but not limited to, the date, time and duration of the communication, and the following, without geographic limit:

   a.   IP addresses, including IP addresses associated with access to the account;

   b.   Headers of email messages, including the source and destination network addresses, as well as the routes of transmission and size of the messages, but excluding content located in headers, such as subject lines; and

   c.   the number and size of any attachments.

IT IS FURTHER ORDERED, pursuant to Title 18, United States Code, Section 3123(c)(1), that the use and installation of the foregoing occur for a period not to exceed 60 days;

IT IS FURTHER ORDERED, pursuant to Title 18, United States Code, Section 3123(b)(2) and in accordance with the provisions of section 3124(b), that the Service Provider, upon service of the order upon it, shall furnish information, facilities, and technical assistance necessary to accomplish the installation of the pen register and trap and trace devices, including installation and operation of the devices unobtrusively and with a minimum of disruption of normal service;

3

IT IS FURTHER ORDERED that the Service Provider and any other person or entity whose assistance may facilitate execution of this Order notify special agents of the investigating agency of any changes relating to the SUBJECT EMAIL ACCOUNT, including changes to subscriber information, and to provide prompt notice to the investigating agency of any termination of service to the email account;

IT IS FURTHER ORDERED that the Service Provider furnish the results of the pen register and trap and trace device installations to special agents of the investigating agency as soon as practicable, and on a continuing basis, 24 hours a day for the duration of the Order;

IT IS FURTHER ORDERED that the Service Provider and any other person or entity whose assistance is used to facilitate this Order be compensated by the investigating agency for reasonable expenses directly incurred in providing such assistance.

Good cause having been shown, IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§ 3123(d) and 2705(b), that this Order and the application be sealed until otherwise ordered by the Court, and that the Service Provider, its representatives, agents and employees, and any other person or entity involved in facilitating this Order shall not disclose in any manner, directly or indirectly, by any action or inaction, the existence of this application and Order, the resulting pen register, or this investigation, except as necessary to effectuate the Order, unless and until authorized by this Court.

Dated: Brooklyn, New York
       January 6, 2014

THE HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK